UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 25-cr-20031-ALTONAGA

UNITED STATES OF AMERICA,
Plaintiff,

V.

AARON HAMMOND,
Defendant.
_______________________________________/

DEFENDANT'S MOTION TO SUPPRESS POST ARREST INTERVIEW

Defendant, AARON HAMMOND, through undersigned counsel and pursuant to Fed.R.Crim.P. 12(b) respectfully moves to suppress post arrest, post-*Miranda* statements made by the Defendant to law enforcement during a custodial interrogation and in support says:

**Factual background.**

An indictment was returned on January 24, 2025, charging Mr. Hammond and his three codefendants with with Conspiracy to Kidnap, in violation of 18 U.S.C. §1201(c) (count one) and Conspiracy to Commit a Hobbs Act Robbery, in violation of 18 U.S.C. §1951(a) (count two). (D.E. 34) The indictment alleges the conspiracy began January 6, 2025, and continued through January 13, 2025. The Complaint alleges the conspiracy began when a confidential source approached law enforcement with information that and individual was planning to assemble a group of people to kidnap a jeweler who worked out of the Seybold building in Miami, Florida. (D.E. 1)

On January 13, 2025, the Defendant was arrested along with the three codefendants following an investigation and surveillance conducted by agents of the F.B.I. Following his arrest, Defendant Hammond was handcuffed and taken to an F.B.I. office where he was questioned. The interrogation was audio and video recorded.

The agents asked Defendant Hammond if he would agree to speak with them and he did. In the beginning of the interrogation the agents made it clear to him that he was not under arrest.

> FBI Agent:
>
> First, appreciate you coming in to talk to us and make it abundantly clear you're not under arrest. Right. Just appreciate you coming back to the office, trying to figure out what was going on today.

A few minutes later the FBI Agent read Defendant Hammond the rights pursuant to *Miranda*:

> FBI Agent:
>
> Yeah. All right, so we're doing this voluntary interview. Um, we appreciate you coming in to talk with us. All right. You still have rights. So, uh, this is. I'm gonna read this to you. These are your rights. All right? Before you ask any questions, you must understand your rights. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish. If you decide to answer any questions. Not without, um. If you decide to answer any questions now without any lawyer present, you have the right to stop answering anytime. Okay.

After the agents read the *Miranda* warning, Defendant Hammond was asked if he was under the influence of of drugs:

> Agt.: And are you currently under the influence of any drug or alcohol right now?
> Def. Right now? I did smoke this morning, but I do have a medical card.
> Agt. Smoke what?
> Def. Marijuana. That's it.
> Agt. What time?
> Def. Uh, in the morning. Around six or seven. Okay.
> Agt. Do you feel impaired right now?
> Def. No I don't have…
> Agt. Yeah, but you understand, like, the questions and stuff like that, you know where you're at?

Def. Ah yes sir. Okay.
Agt. You know what day of the week it is?
Def. Today is basically, if I remember, Monday.
Agt. Okay.
Def. All right sir.
Agt. Awesome.
Agt. Good deal.

The agents told Defendant Hammond a second time that he was not under arrest after reading *Miranda* rights.

FBI Agent:

Okay, I think this is a good. A good point to just, um, also remind you of something again. You're here voluntarily. We told you, you're not under arrest. But, uh, I want this. As you alluded to earlier, I want you to just understand that if you're being truthful, we aren't going to have any issues. When issues are going to come is if you lie to us. Unfortunately, lying to a federal agent is against the law, so I mentioned that because I don't want to get to a point here, and I want to take you at face value, and I want to believe everything you're saying. Some of the stuff you're kind of saying doesn't make too much sense, but, hey, I mean, it is what it is. What I'm saying is that I don't want this to start as little white lies like, that you know his real name but you're not saying it. And then you're like, let me just keep. And I want you to go. I don't want you to go down that path. Uh, drive off the cliff. And then this goes from like, hey, you're not in trouble, to, like, you up?

Subsequently, the agents told Defendant Hammond a third time that he was not under arrest.

FBI Agent:

So I think. I think we're okay with the timeline. I think they're. You know what. What Kyle's trying to explain to you is that. There should be information that you should have heard. Again, we're not. We've already expressed to you, you're not under arrest. You're not. We know this is. This is an investigation. Remember, we're the FBI.

Listen here, this isn't like, uh, the regular state, local cops doing the traffic stop, trying to figure out what's going on. So basically we're giving you some answers to the test. We're asking you questions we know answers to. Basically, I'm gonna be straight up with you 99% of the questions we're asking you, we know the answers to.

At some point in the interview, Defendant Hammond believed he was going home and even asked how he was going to get home to Ocala.

Def:

I don't have a ride home if you guys take T. So he's my ride home. So I don't know how I'll get home.

Defendant Hammond was evaluated by Dr. Ted Cunliffe, a psychologist, for competency pursuant to 18 U.S.C. §4241. On May 22, 2025, Dr. Cunliffe provided Defendant Hammond with a 28-page draft copy of his Psychological Evaluation.[1] Dr. Cunliffe's Evaluation gives the following Principal Diagnosis:

> **Principal Diagnoses:** F84 Autism Spectrum Disorder requiring substantial support with accompanying intellectual impairment, language impairment, but no known genetic or other medical condition or environmental factor, F43.10 Posttraumatic Stress Disorder with dissociative symptoms and delayed expression, Moderate to Severe, F33.2 Major Depressive Disorder, Recurrent, Moderate, F70 Intellectual Developmental Disorder (Intellectual Disability), Mild, F12.21 Cannabis Use Disorder, in early remission in a controlled environment, and Z65.1 Imprisonment or Other Incarceration.

Dr. Cunliffe determined that Defendant Hammond is not competent to stand trial. His Evaluation found that Defendant Hammond's ability to appreciate the charges against him, his capacity to disclose relevant facts to defense counsel, and to testify in his own defense were inadequate. Dr. Cunliffe's Evaluation concluded that Defendant Hammond is incompetent with regard to the appreciation of charges and allegations; incompetent with regard to his capacity to disclose relevant facts to defense counsel; and incompetent with regard to his capacity to testify in his own defense.

Dr. Cunliffe's Evaluation also included an assessment of his competency to waive his rights pursuant to *Miranda*. Dr. Cunliffe interviewed Defendant Hammond about his *Miranda* and legal

---

[1] On May 22, 2025, the due date for filing pretrial motions, Dr. Cunliffe had provided Defendant Counsel with a 28-page draft of his Psychological Evaluation. However, Dr. Cunliffe advised Counsel that the Evaluation needed to include certain information from Defendant Hammond's past medical records before the evaluation could be finalized. Dr. Cunliffe was not able to complete it prior to the filing of this motion due to Dr. Cunliffe's other professional obligations. Dr. Cunliffe advised Counsel that the final evaluation would be sent to Counsel on May 23, 2025. As soon as it is received by Counsel, the Defendant will provide the Government with a copy and will file it under seal with the Court.

rights at length and administered a semi-structured interview test specifically designed to assess knowledge and ability to exercise Miranda rights (Miranda Rights Comprehension Instruments "MRCI"). Dr. Cunliffe also reviewed the recorded interview. Although there was no evidence of physical coercion by the police or anyone else, the results of the recorded interview indicated that his statements to the law enforcement were not done freely and voluntarily.

**Legal Argument.**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court held that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). For a defendant's incriminatory statements to be admissible, the government must prove by a preponderance of the evidence that the defendant made a knowing, voluntary and intelligent waiver of his Miranda rights. *United States v. Farris*, 77 F.3d 391, 396 (11th Cir. 1996). The voluntariness of the waiver is based upon the totality of the circumstances. *United States v. Barbour*, 70 F.3d 580, 584 (11th Cir. 1995). A *Miranda* waiver is effective only where the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995).

Determining whether the waiver is made knowingly and intelligently is a two-step process. First, the relinquishment of the right must have been voluntary and not the product of intimidation, coercion or deception. Second, the waiver must be made with full awareness of the nature of the right that is being abandoned as well as the consequences of the decision to abandon the right. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "Only if the totality of the circumstances surrounding

the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id*.

While mental illness, by itself, does not render a confession to have been involuntarily coerced unless law enforcement exploited it, mental illness must be considered in determining Defendant's waiver.[2]

> "There is little doubt that mental illness can interfere with a defendant's ability to make a knowing and intelligent waiver of his Miranda rights. Competency to make sucha waiver is, of course, to be determined according to the totality of the circumstances. [citations omitted] Nonetheless, mental illness is certainly a factor that a trial court should consider when deciding on the validity of a waiver. If a defendant cannot understand the nature of his rights, he cannot waive them intelligently.

*Miller v. Dugger*, 838 F.2d 1530, 1539 (11th Cir. 1988). "The Supreme Court could not have stated more clearly that an uncounseled statement must be both voluntary and made after a knowing and intelligent waiver of the *Miranda* rights to be admissible." *Id.* 838 F.2d at 1538. The Eleventh Circuit has recognized that "a defendant's impaired mental state (whether drug induced or otherwise) may prevent that person from understanding the nature of his or her waiver." *Barbour*, 70 F.3d at 585. *see also Smith v. Zant*, 887 F.2d 1407, 1427-28 (11th Cir. 1989) (explaining that test for *Miranda* waiver has "two distinct dimensions" and that "[o]nly if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived") (citations and internal quotation marks omitted).

Dr. Cunliffe's evaluation concluded that Defendant Hammond is not fully competent to stand trial. Defendant Hammond has been diagnosed as having Autism Spectrum Disorder; Posttraumatic Stress Disorder with dissociative symptoms and delayed expression, Moderate to

[2] See Barbour, 70 F.3d at 585 ("The fact that a defendant suffers a mental disability does not, by itself, render a waiver involuntary; there must be coercion by an official actor.")

Severe; and Major Depressive Disorder, Recurrent, Moderate; Intellectual Developmental Disorder (Intellectual Disability), Mild.

Dr. Cunliffe's evaluation also concluded that Defendant Hammond's mental health impairment prevented him from having the capacity to knowingly, intelligently, and voluntarily waive his Miranda rights to fully comprehend the constitutional right he was waiving and prevented him from appreciating the full extent of the consequences of waiving that constitutional right. He determined that though there was no evidence of physical coercion by law enforcement, a review of the interview indicated that the statements were not made freely and voluntarily. The Evaluation found that though Mr. Hammond is 22 years old, his functional or mental age is likely much lower than this. The Evaluation concluded his IQ scored in an extremely low range of 66. Furthermore, to add to his confusion, Defendant Hammond was advised multiple times by the agents that he was not under arrest.

Dr. Cunliffe's conclusion is that Defendant Hammond was not competent to waive *Miranda* rights due to his verbal comprehension and oral expression problems and academic achievement difficulties.

**Conclusion**

For the foregoing reasons Defendant Hammond respectfully moves to suppress all post arrest, post-*Miranda* statements.

**Rule 88.9 Certificate**

Counsel for the Defendant certifies that Counsel has conferred with Assistant United States Attorney Elena Smukler who advised that the Government opposes the motion herein.

May 22, 2025. Respectfully submitted,

By: /S/__Ken Swartz____________
Ken Swartz, FBN 331929
ken@swartzlawyer.com
The Swartz Law Firm

14 N. E. First Avenue
Suite 1211
Miami, Florida 33132
Tel: 305-579-9090
Fax: 305-579-9090
Attorney for Defendant Aaron Hammond

**CERTIFICATE OF SERVICE**

I CERTIFY that on May 22, 2025, the foregoing document was filed with the Clerk of the Court using CM/ECF and simultaneously served the foregoing document on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Ken Swartz_____

Ken Swartz